Case No. 2:14-cv-07799 -BRO

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

THE BEST SERVICE CO., INC.

Appellant,

v.

EMILY ANN BAYLEY

Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO DIVISION
1:14-BK-10868-VK

JUDGE VICTORIA KAUFMAN

## REPLY BRIEF OF APPELLANT THE BEST SERVICE CO., INC.

Clark Garen SBN 50564
Rachel Zwernemann SBN 286515
THE LAW OFFICES OF CLARK GAREN
(Salaried Employees of The Best Service Co., Inc.)
6700 S. Centinela Ave., 3rd Floor
Culver City, CA 90230
310-391-0800
Attorneys for Appellant, The Best Service Co., Inc.

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION.....................................................................................1

II.   STAY PENDING APPEAL.....................................................................4

III.  ANALYSIS OF 11 U.S.C. § 362............................................................5

IV.   THE *DUCICH* CASE............................................................................6

V.    ADEQUATE PROTECTION AND LIENS.............................................7

VI.   SHERIFF'S INSTRUCTIONS................................................................8

VII.  ATTORNEY FEES CANNOT BE AWARDED TO APPELLEE FOR

      PROSECUTION OF THIS APPEAL....................................................13

VIII. CONCLUSION......................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

### <u>Cases</u>

*Eskanos & Adler, P.C. vs. Leetien*, 309 F. 3d 1210 (9th Cir. 2002)..........................11

*In re Abrams*, 127 B.R. 239 (B.A.P. 9th Cir., 1991)...................................................12

*In re Cohen*, 305 B.R. 886 (B.A.P. 9th Cir., 2004)....................................................13

*In re Colortran, Inc*., 210 B.R. 823 (B.A.P. 9th Cir., 1997) aff'd in part, vacated in

    part, 165 F.3d 35 (9th Cir. 1998).......................................................................12

*In re Del Mission Ltd.,* 98 F. 3d 1147 (9th Cir. 1996)...............................................12

*In re Ducich*, 385 F. Supp. 1287 (C.D. Cal. 1974)...................................................6, 7

*In re Gebhart,* 621 F.3d 1206 (9th Cir. 2010)............................................................1

*In re Hardesty*, 442 B.R. 110 (Bankr. N.D. Ohio 2010)......................................9, 10

*In re Hernandez*, 468 B.R. 396 (Bankr, S.D. Cal.) aff'd on other grounds, 483 B.R.

    713 (B.A.P. 9th Cir. 2012)..............................................................................11

*In re Johnson*, 262 B.R. 831 (Bankr. D. Idaho 2001)................................................9

*In re Miller*, No. 11_26914 ABC, 2011 WL 6217342

    (Bankr. D. Colo. Dec. 14, 2011).................................................................7, 8

*In re Schwartz-Tallard,*765 F.3d 1096 (9th Cir. 2014)..............................................14

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*In re Schwartz-Tallard*, No. 12-60052, 2014 WL 7238219 (9th Cir. Dec.

19, 2014)......................................................................................14

*McCaffey Canning Co. v. Bank of Am.,* 109 Cal. App. 415, 294 P. 45

(Cal. Ct. App. 1930)...............................................................10, 11

*Morgan Gaur. Trust Co. of New York v. American Sav. and Loan Ass'n.*, 804 F.2d

1487 (9th Cir. 1986).................................................................5, 6

*Owen v. Owen*, 500 U.S. 305 (1991)..........................................................1

*U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983).....................................13

*Sternberg v. Johnston*, 595 F. 3d 937 (9th Cir. 2010)..................13, 14, 15

## Rules

Fed. R. Bankr. P. 4003......................................................................1

Fed. R. Civ. P. 68...........................................................................15

Fed. R. Bankr. P. 7068......................................................................15

## Statutes

11 U.S.C. § 362..............................................................................5

I.    **INTRODUCTION**

Property held in *custodia legis* by a levying officer becomes property of the bankrupt estate when a bankruptcy is filed by the judgment debtor.  Although Appellee claimed the monies under levy as exempt, the exempt property remains property of the estate until the time for objecting to the exemptions has expired.  *In re Gebhart,* 621 F.3d 1206, 1209–1210 (9th Cir. 2010); *Owen v. Owen*, 500 U.S. 305, 308, (1991).  The time for objecting to exemptions is thirty (30) days *after* completion of the First Meeting of Creditors.  Fed. R. Bankr. P. 4003(b)(1).  The first meeting of creditors in Appellee's Bankruptcy case was held on April 16, 2014. [AR[1] tab 39 pg 212]. Therefore, property claimed as exempt was property of the estate when Appellee's motion for violation of the Automatic Stay was filed on April 28, 2014.  [ER 4 pg 002 EOD 30].  More importantly, it was also property of the estate on April 15, 2014 and April 22, 2014 when Appellee demanded Appellant direct the levying officer to release property of the estate to the bankrupt without a Court Order.  [*Id*. at pgs 026-034].  The property at issue was property of the estate and **not** property of the Bankrupt.

------

[1] "AR" as used within this Brief shall reference Appellee's Excerpt of Record provided as Appendix 1 to Appellee's Opening Brief filed 12/23/14.  "ER" will continue to refer to Appellant's Excerpt of Record previously filed as Appendix 1 to Appellant's Opening Brief filed 12/9/14.

Appellant has no legal authority or right to release property of the estate *in custodia legis* to the Bankrupt without a Court Order.  If Appellant releases property of the estate to the Bankrupt without a Court Order, Appellant could be liable for damages to others if it is later determined the bankrupt had no right to the property.

There are no Ninth Circuit Appellate cases directly on point.  There is no binding precedent in the Ninth Circuit, or in any other circuit, on this issue.  There are a number of trial court decisions going both ways, and no creditor has yet assumed the financial burden of obtaining binding precedent on this issue.

Appellant has never claimed a right to the funds under levy.  The purpose of this Appeal is to create binding precedent in the Ninth Circuit on this issue so all creditors will be clear that creditors cannot comply with requests like Appellee's.

On February 20, 2014, *immediately* after Appellant learned Appellee filed for bankruptcy, Appellant sent the following communication to the levying officer:

> "Please immediately stay further execution as to Emily A. Bayley-Lequire on the above-referenced matter, pending discharge or dismissal of the bankruptcy that was filed on February 20, 2014.
>
> Please continue to hold any funds that were levied and remitted to the sheriff's office prior to the filing of the bankruptcy, pending further instructions from the bankruptcy trustee or the judgment creditor (after bankruptcy discharge or dismissal)."          [ER tab 4 pg 059 EOD 47].

Appellee asserts that Appellant was "explicitly instructing the Sheriff to continue to assert control over the funds." [*See* Appellee's Opening Br. pg. 3].

2

Analysis of this communication proves that this is NOT true!

Appellee obtained an Order avoiding the lien of Appellant on her real property. [ER tab 1 pgs 027-031 EOD 30].  This Order did not pertain to, and said nothing about, the monies held in *custodia legis*.  The Order did not order Appellant to take any action at all.  *Id.*

Appellee argues the burden of obtaining an Order from the Bankruptcy Court directing the levying officer to pay monies under levy places an undue burden on the bankrupt.  Appellee could have easily added one or two sentences to the Motion to Avoid Lien requesting the levying officer through Court Order to release the funds to Appellee, but failed to do so.  This would have been an insignificant burden on Appellee and not an undue burden as Appellee claims, and it would have resolved this issue at no cost to *anyone*!

On April 22, 2014, Appellant sent Counsel for Appellee a letter which states:

"Pursuant to the Notice of Automatic stay all creditor actions are heretofore stayed unless relief is granted pursuant to an order issued by the United States Bankruptcy Court or Section 362 therein and the Sheriff is required to hold any funds recovered from the levy of the Judgment Debtor's bank accounts pending disposition of the bankruptcy or further instructions from the bankruptcy trustee or Los Angeles County Sheriff.

The funds being held by the Sheriff are now the property of the Bankruptcy Trustee. Judgment Creditor has no authority, under Section 362(a)(6), to instruct the Sheriff to release the funds, as you demanded and is not in violation of the Automatic Stay Order."  [*Id.* at pg 039 EOD 30].

Everything in this letter is correct! On April 22, 2014, the time for objecting to exemptions had not yet expired, and funds in *custodia legis* were property of the estate.  Whether they belonged to the bankrupt estate or the trustee does not pertain to resolving the issues before this Court *because* it is clear they did *not* belong to the debtor on April 22, 2014!

## II.   <u>STAY PENDING APPEAL</u>

Appellant sought a stay pending appeal to insure payment of the damage order would not moot this appeal.  Appellee Debtor did everything possible to prevent issuance of a stay, realizing payment of the damage order would moot the appeal.

On November 21, 2014, as reported by Appellee, the Court issued a stay upon the posting of a $100,000 cash bond by the Appellant Creditor. [*See* Appellee's Opening Br. pg. 6].  Since Appellee has raised this issue in her Opening Brief, Appellant is attaching a copy of the transcript of this hearing as an appendix to this Reply Brief and is requesting the Court include this transcript in the record on appeal as the transcript was unavailable at the time designation of the record occurred.  In reply papers, Appellee Debtor initially agreed a bond of $25,000 would be sufficient. [Appendix 1 to Appellant's Reply Br. pgs. 1-5].  However, when Appellee realized the Court was going to order Appellant to post that amount and Appellant was willing to post that amount, Appellee withdrew her offer to accept a $25,000 bond and

4

instead negotiated with the Court to increase the bond to $100,000. [*Id.* at 17-47].

Appellant Creditor timely complied with the Order of the Bankruptcy Court and

posted a bond of $100,000, further demonstrating this appeal is based on principle.

## III.   ANALYSIS OF 11 U.S.C. § 362

Appellee asserts the Creditor was in control of the funds in *custodia legis*.

This is *wrong*!  The Sheriff controlled the funds!  If Appellant was in control of those

funds, Appellant could have instructed the Sheriff to pay the monies to Appellant.

While Appellant issued no such instruction, the Sheriff would have refused to comply

with such an instruction. [ER tab 5  pg 071-072 EOD 49].

The Sheriff held the funds as a *de facto* trustee for all parties - the creditor, the

bankrupt, the bankruptcy trustee, and the bankruptcy court.

11 U.S.C. § 362 is in essence a stay order requiring maintenance of the status

quo at the time bankruptcy is filed until further order of the Bankruptcy Court.  The

refusal of the creditor to direct the levying officer to transfer possession of property

of the estate to the bankrupt can hardly be described as failing to maintain the status

quo or violating the order requiring that creditors do *nothing!*

The case of *Morgan Gaur. Trust Co. of New York v. American Sav. and Loan

Ass'n.*, 804 F.2d 1487 (9th Cir. 1986) does not support Appellee's argument.  The

pertinent passages from this case follow:

5

"When Manville filed its petition in bankruptcy, it triggered the automatic stay provisions of 11 U.S.C. § 362(a) (1982).  Actions taken in violation of the automatic stay are void. *Sambo's Restaurants, Inc. v. Wheeler* (In re Sambo's Restaurants, Inc.), 754 F.2d 811, 816 (9th Cir.1985). Subsection 362(a)(6) stays "any act to collect, assess, or recover a claim against the debtor that arose before [the filing of the petition]." Morgan argues that Chase's presentment of the notes was an act to collect a claim against Manville, and therefore violated subsection 362(a)(6), and was void.
* * *
However, the language of the other provisions of the automatic stay suggests that mere requests for payment are not barred *absent coercion or harassment* by the creditor. These provisions stay acts that immediately or potentially threaten the debtor's possession of its property: commencement of judicial proceedings; enforcement of judgments; creation and enforcement of liens; and setoffs of debts owing to the debtor against claims against the debtor. 11 U.S.C. §§ 362(a)(1), (2), (4), (5), (7) & (8). The activities that are specifically prohibited all involve attempts to *confiscate the debtor's property or require the debtor to act affirmatively to protect its interests*. Presentment and other requests for payment unaccompanied by coercion or harassment do not appear to fall within the prohibitions of section 362(a).
* * *
This language proves no violation of stay.     *Id.* at 1490-1491.

*Morgan* holds that a creditor **does not violate** the automatic stay just by

requiring affirmative action by the debtor to protect its interest.

Appellant is not exercising control over funds of the estate.  Appellant has no

control over the funds. They are *in custodia legis* and their status is only changeable

by the Court.

## IV.   **THE *DUCICH* CASE**

Appellee argues the case *In re Ducich*, 385 F. Supp. 1287 (C.D. Cal. 1974) is

no longer valid authority because the law has changed since 1974 when the opinion

was issued.  Appellee fails to explain how the law was changed, or how this change

in the law supercedes the analysis of the *Ducich* case, which is still good law.

The primary change regarding the automatic stay in 1978 was to make it

automatic on filing instead of on notice.  However, the provisions of the automatic

stay insofar as they pertain to the issues now before this court were not changed by

*any* of the subsequent amendments to the United States Bankruptcy Code.

**V.    ADEQUATE PROTECTION AND LIENS**

Appellee seeks to distinguish the case *In re Miller*, No. 11_26914 ABC, 2011

WL 6217342 (Bankr. D. Colo. Dec. 14, 2011) by confusing its discussion of liens.

Liens have nothing to do with the opinion in *Miller*, which holds as follows:

> "The only alleged violation of the stay in the Complaint is MKAD's failure to
> release to Plaintiff the funds subject to the Kessler's writs of garnishment.
> Plaintiff claims that MKAD's failure to turn the garnished funds over to her
> after her bankruptcy was filed, and after MKAD became aware of the
> bankruptcy, is an "act to obtain possession of property of the estate or of
> property from the estate or to exercise control over property of the estate,"
> which is prohibited by 11 U.S.C. § 362(a)(3). It is not alleged that MKAD has
> done anything with the funds other than to continue to hold them. Accordingly,
> for the Complaint to state a claim, the Court must find that merely holding the
> funds was a violation of the stay, or, in other words, that the automatic stay
> imposes an affirmative duty upon a creditor (or its agent) holding funds subject
> to a garnishment to return the funds to the debtor.
> * * *
> Recognizing that courts are split on the question of whether the automatic stay
> requires a secured creditor holding property of a debtor, which is validly seized
> pre-petition, to affirmatively act to turn the property over to the debtor, or to
> immediately seek relief from the stay or move for adequate protection, this
> Court believes that the better view is that a creditor's refusal to release

7

garnished funds, to the potential detriment of its lien rights in those funds, does not violate the automatic stay. See In re Giles, 271 B.R. 903 (Bankr.M.D.Fla.2002); contra Roche v. Pep Boys, Inc. (In re Roche), 361 B.R. 615, 621–22 (Bankr.N.D.Ga.2005)."          *Id*. at 3.

The lien and adequate protection issues briefly mentioned in the *Miller* case have nothing to do with the holding or with the case at hand.  However, the *Miller* case stated that "Until the competing interests of the Kesslers and Plaintiff (who apparently claimed the funds were exempt) are resolved in a judicial proceeding, Plaintiff retains an interest in the funds." *Id.*  Since the claim by Appellee that the property under levy was exempt had not yet been determined and was not final, the *Miller* opinion provides another reason why Appellant was not required to comply with the Appellee's request to release funds held in *custodia legis* before the period to object to Debtor exemptions had expired.

## VI.   THE SHERIFF'S INSTRUCTIONS

Appellee gives a rambling narrative about conflicting instructions to the Sheriff, and, in particular, the refusal of the Sheriff to comply with a lien avoidance order. The problem with Appellee's argument is the lien avoidance order had nothing to do with the property held *in custodia legis* by the levying officer.[ER tab 1 pgs 027-031 EOD 30].

If Appellee had provided the levying officer with an order from the Bankruptcy Court directing it to release the funds under levy to Appellee, the Sheriff would have

complied with the order ***without*** the need of any consent by Appellant.  If Appellee

had provided Appellant with an order from the Bankruptcy Court directing it to

release the funds under levy to Appellee, Appellant would have complied with that

order and requested the Sheriff to release the funds to Appellee. What Appellee

provided was an order avoid the real estate lien on a specific parcel of real property

created by Appellant's Abstract of Judgment. [*Id.* at pgs. 009, 027-31]. This is why

neither the Sheriff nor the Appellant released the funds under levy. The order of the

Bankruptcy Court neither permitted nor required such action.

While *In re Johnson*, 262 B.R. 831 (Bankr. D. Idaho 2001) is a Trial Court

decision supporting Appellee's position, the underlying facts are distinguishable.  In

*Johnson* case, there was a history of hostility between the parties based on a belief of

white supremacy.  *Id* at 837.  In addition, after the debtors filed a request for a

turnover order, the creditors filed *opposition* to it and then conceded the issue at the

hearing.  *Id* at 847.  Further, after the turnover order was granted and issued, the

creditors caused the Sheriff to fail to comply with the order.   *Id.*  There is no such

creditor misconduct in the Bayley case, and the *Johnson* case stands for the

proposition that bad facts make bad law.

*In Re Hardesty*, 442 B.R. 110 (Bankr. N.D. Ohio 2010) has nothing to do with

the case at hand and is wholly inapplicable.  In *Hardesty*, the creditor initiated a real

estate foreclosure action when debtor filed for bankruptcy protection. *Id.* at 112. Under Idaho law, a foreclosure action is conducted by the Sheriff, who appoints three appraisers to appraise the property. After the Petition was filed, the Sheriff sent three appraisers to appraise the property. *Id.* The Court correctly found this violated the automatic stay, even though the creditor claimed the appraisers were sent by the Sheriff. The *Hardesty* Judge found the creditor was obligated to notify the Sheriff of bankruptcy filing and cease any further collection activity. Creditor failed to do this, which was the basis of the stay violation finding. *Id.* at 114. Here, Appellant notified the Sheriff of the filing on the date the bankruptcy was filed and instructed the Sheriff to discontinue all further action. [ER tab 4 pg 059 EOD 47].

The case of *McCaffey Canning Co. v. Bank of Am.,* 109 Cal. App. 415, 294 P. 45 (Cal. Ct. App. 1930) is likewise not relevant to this case. In *McCaffey*, the levying officer seized property under a writ of attachment, received a third party claim, and released the property. After the creditor was awarded judgment, and debtor was insolvent, creditor sued the Sheriff for conversion. The Court found the Creditor was constructively in possession of the property held by the Sheriff for the purposes of being able to file a conversion action against the Sheriff for the alleged unlawful release of the property. *Id.* at 423-424, 426. This case has nothing to do with any facts of the Bayley case at hand.

10

Appellee also mistakenly cites *Eskanos & Adler, P.C. vs. Leetien*, 309 F. 3d 1210 (9th Cir. 2002).  In *Eskanos*, the creditor had a collection lawsuit pending with a trial date set when debtor filed bankruptcy.  Attorneys for bankrupt continually contacted attorneys for creditor requesting they stay or stop the action. The attorneys refused to respond to these requests until the bankrupt filed a motion for stay violation.  *Id.* at 1212-1213.  These facts have nothing to do with the Bayley case.

In addressing the case *In Re Hernandez*, 468 B.R. 396 (Bankr, S.D. Cal.) aff'd on other grounds, 483 B.R. 713 (B.A.P. 9th Cir. 2012), the following passage shows why this case supports Appellant, *not Appellee*:

> "Collect Access, LLC ("Collect") brought a motion ("Motion") to vacate an order for turnover of personal property entered by the Court at the request of debtor Jose J. Hernandez ("Debtor"). The Motion raises issues about the respective rights of a creditor and debtor in funds that a levying officer has seized, but has not yet turned over to the creditor by the time the debtor files bankruptcy. The Debtor successfully moved the Court to compel turnover of the funds that were held by the sheriff on the petition date. Collect contends the turnover was wrongfully ordered because the Debtor did not have any rights in the funds after they were seized by the sheriff. Collect refused to comply with the turnover order and the Debtor also seeks damages for Collect's refusal to turn over the funds."          *Id.* at 398.

In the *Hernandez* case, like almost all of the other cases relied upon by Bayley, the debtor obtained a turnover order that the creditor *refused* to comply with.  The creditor even moved for reconsideration of the order on frivolous grounds.  *Id.* However, *Hernandez* stands for the proposition advanced by Appellant that Bayley

11

needed to obtain a turnover order or some other authority from the Court or Trustee before Appellant or Sheriff were required to release the funds under levy.

      The case of *In re Colortran, Inc.*, 210 B.R. 823 (B.A.P. 9th Cir., 1997) aff'd in part, vacated in part, 165 F.3d 35 (9th Cir. 1998) is likewise inapplicable.  In the Colortran case, a shipper like Fed. Ex. was in possession of a large shipment of debtor's goods when debtor filed for bankruptcy. The shipper claimed a lien on the shipment, and refused to deliver it to anyone until it was paid for pre-petition debt. The debtor and shipper submitted a settlement to the court for approval. The court rejected it, and instead found the Shipper had violated the automatic stay.  *Id* at 825. This case has nothing to do with the Bayley case now before this court.

      The case of *In re Del Mission Ltd.,* 98 F. 3d 1147, 1148 (9th Cir. 1996) involved the State of California refusing to approve debtor's sale of a liquor license until all taxes were paid. This case has nothing to do with the Bayley case at hand.

      The case of *In re Abrams*, 127 B.R. 239 (B.A.P. 9th Cir., 1991) is likewise inapplicable to these facts.  In *Abrams*, the creditor repossessed a motor vehicle two weeks *after* the debtors filed for bankruptcy protection. Although the creditor did not know about the bankruptcy filing when the car was repossessed, the creditor did not promptly return the car after being notified.  *Id.* at 240. The Court's finding of a stay violation in *Abrams* has nothing to do with the facts of the case at hand.

*In re Cohen*, 305 B.R. 886 (B.A.P. 9th Cir., 2004) is likewise inapplicable to any of the facts in the Bayley case.  In *Cohen*, the Court found the Debtors had standing to assert the Trustee's avoiding powers on behalf of the estate.  *Id.* at 889.

*U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) actually supports the Appellant's position. In *Whiting*, the Internal Revenue Service seized property pre-petition. The Debtor sought a turn over order, which was granted.  *Id.* Thus, this case supports the Appellant's argument that a turn over order is required.

## VII.   ATTORNEY FEES CANNOT BE AWARDED TO APPELLEE FOR PROSECUTION OF THIS APPEAL

In the case of *Sternberg v. Johnston*, 595 F. 3d 937 (9th Cir. 2010) the Ninth Circuit held that attorney fees cannot be recovered for seeking damages for the violation of the automatic stay. The pertinent part of the opinion reads as follows:

"Allowing attorney fees for a damages action also would not promote the non-financial goals of the automatic stay. More litigation is hardly consistent with the concept of a "breathing spell" for the debtor. In fact, part of the rationale of the "affirmative duty" we have imposed on non-debtors to dismiss collection actions against debtors is that "[c]ounsel must be engaged to defend against a default judgment[and] ... state collection actions are not to be used as leverage in negotiating ... in bankruptcy." Eskanos, 309 F.3d at 1214. There is no reason to think that we should approve these possibilities when they could work to the debtor's advantage. Either way, he is engaged in litigation attenuated from the actual bankruptcy, something we do not think Congress intended to promote by allowing him to collect "actual damages" for a violation of the automatic stay. See Fogerty, 510 U.S. at 534, 114 S.Ct. 1023("Such a bold departure from traditional practice would have surely drawn more explicit statutory language ...."); Fulfillment Services, 528 F.3d at 624 ("While imposition of the British Rule would be far from [an] 'absurd result' ...

13

[,] [h]ad Congress aspired to such a radical departure, it no doubt would have so indicated with explicit language to that effect."). We conclude, therefore, that a damages action for a stay violation is akin to an ordinary damages action, for which attorney fees are not available under the American Rule. *Id* at 948.

Appellee cites the cases of *In re Schwartz-Tallard,* 765 F.3d 1096 (9th Cir. 2014). The key language in *Schwartz* was seeking to vacate the finding of the stay violation so that the creditor could recover the wrongfully foreclosed property. Appellant has made it clear from the beginning that it does not seek possession of the funds held *in custodia legis* by the Sheriff. The only issue is whether the refusal of Appellant Creditor to instruct the levying officer on how to disburse property of the estate constitutes a stay violation. The Appellant has *never* sought the property itself!

Furthermore, the opinion replied upon by Appellant was vacated by order of the Ninth Circuit and cannot be cited as precedent. (See *In re Schwartz-Tallard*, No. 12-60052, 2014 WL 7238219 at *1 (9th Cir. Dec.19, 2014)). This order also reinstates without modification or distinction the opinion of the Ninth Circuit in *Sternberg v. Johnston, supra*, which holds attorney fees may not be recovered on an appeal of a order finding a stay violation.

Appellant never had control over the property under levy and never claimed the right to possession of the property under levy. Therefore, the award of the attorney fees and sanctions by the Trial Court was a violation of the *Sternberg*

14

decision and, by definition, an abuse of discretion.

Additionally, Appellant filed an Offer of Compromise pursuant to Fed. R. Bankr. P. 7068 and Fed. R. Civ. Proc. 68 on June 17, 2014 offering the entry of an Order by the Court returning all funds under levy to Appellee. [ER tab 7 pgs 088-090 DOC 57]. Therefore, Appellant must be awarded all fees and costs from the date of the offer should Appellant prevail in this appeal.

## VIII.     <u>CONCLUSION</u>

The appeal should be granted, and the finding of the Trial Court that Appellant violated the automatic stay must be reversed. The award of damages and attorney fees must be reversed. Attorney fees must be denied to Appellee on Appeal. Appellant Creditor must be refunded the $100,000 bond posted with the bankruptcy court to obtain stay pending appeal and be awarded fees and costs.

Dated: January 6, 2015

/s/ Clark Garen
Clark Garen
LAW OFFICES OF CLARK GAREN
(Salaried Employees of The Best Service Co., Inc.)
Clark Garen SBN 50564
Rachel Zwernemann SBN 286515

Attorneys for the Appellant,
The Best Service Co., Inc

15

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief, according to Word Perfect, contains 4,054

words, excluding the parts of the brief exempted by Fed. R. App. P.

32(a)(7)(B)(iii).


2.      This brief complies with the type face requirements of Fed. R. App. P. 32(a)(5)

and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief

has been prepared in 14-point Times New Roman in Word Perfect , which I

understand to be a proportionally spaced typeface.


Dated: January 6, 2015

/s/ Clark Garen
Clark Garen
LAW OFFICES OF CLARK GAREN
(Salaried Employees of The Best Service Co., Inc.)
Clark Garen SBN 50564
Rachel Zwernemann SBN 286515

Attorneys for the Appellant,
The Best Service Co., Inc.